FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jan 28, 2019

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

DEVIN C.,

          Plaintiff,

          v.

COMMISSIONER OF SOCIAL
SECURITY,

          Defendant.

No. 4:18-CV-05051-JTR

ORDER GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

**BEFORE THE COURT** are cross-motions for summary judgment. ECF Nos. 14, 15. Attorney D. James Tree represents Devin C. (Plaintiff); Special Assistant United States Attorney L. Jamala Edwards represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 7. After reviewing the administrative record and briefs filed by the parties, the Court **GRANTS** Defendant's motion for summary judgment and **DENIES** Plaintiff's motion for summary judgment.

## JURISDICTION

Plaintiff filed applications for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB) on November 13, 2013, Tr. 202-03, alleging disability since December 31, 2006, Tr. 390, 397, due to irritable bowel syndrome (IBS), fatigue, menstrual pain, anxiety, and vitamin D3 deficiency, Tr. 431. The

applications were denied initially and upon reconsideration.  Tr. 257-63, 266-76.

Administrative Law Judge (ALJ) Stewart Stallings held hearings on November 23, 2016 and June 1, 2017 and heard testimony from Plaintiff, psychological expert Kent Layton, Psy.D., and vocational expert Fred Cutler.  Tr. 156-201.  The ALJ issued an unfavorable decision on July 12, 2017.  Tr. 16-29.  The Appeals Council denied review on January 26, 2018.  Tr. 1-7.  The ALJ's July 12, 2017 decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. §§ 405(g), 1383(c).  Plaintiff filed this action for judicial review on March 27, 2018.  ECF No. 1, 4.

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties.  They are only briefly summarized here.

Plaintiff was 25 years old at the alleged date of onset.  Tr. 390.  She completed the twelfth grade in 2000.  Tr. 431.  Her reported work history includes the jobs front desk clerk, customer service representative, and movie ticket and concession salesperson.  Tr. 432, 445.  When applying for benefits Plaintiff reported that she stopped working on December 31, 2006 because of her conditions.  Tr. 431.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  The Court reviews the ALJ's determinations of law de novo, deferring to a reasonable interpretation of the statutes.  *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).  The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error.  *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance.  *Id*. at 1098.  Put

another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097. If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-99. This burden is met once the claimant establishes that physical or mental impairments prevent her from engaging in her previous occupations. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the claimant cannot do her past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work, and (2) specific jobs which the claimant can perform exist in the national economy. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-94 (9th Cir. 2004). If the claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## ADMINISTRATIVE DECISION

On July 12, 2017, the ALJ issued a decision finding Plaintiff was not

disabled as defined in the Social Security Act from December 31, 2006 through the date of the decision.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since December 31, 2006, the amended date of onset.  Tr. 19.

At step two, the ALJ determined that Plaintiff had the following severe impairments:  chronic fatigue; abdominal pain with nausea; and anxiety.  Tr. 19.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  Tr. 19-20.

At step four, the ALJ assessed Plaintiff's residual function capacity and determined she could perform a range of light work with the following limitations:

> She can occasionally lift or carry twenty pounds and frequently lift or carry ten pounds.  She can stand or walk for six hours in an eight-hour workday and sit for six hours in an eight-hour workday.  She can frequently climb ramps and stairs.  She can occasionally climb ladders, ropes, or scaffolds.  She can occasionally stoop.  She can frequently crouch, kneel, or crawl.  She should avoid anything more than occasionally use of dangerous moving machinery or exposure to unprotected heights.  She should be limited to a low stress job, defined as not requiring the worker to cope with work related circumstances that could be dangerous to the worker or others.  She should further be limited to routine and repetitive work type tasks, which could be complex in nature.

Tr. 21.  The ALJ identified Plaintiff's past relevant work as checker/cashier and sales clerk and concluded that Plaintiff was able to perform this past relevant work.  Tr. 27.

As an alternative, the ALJ made a step five determination that, considering Plaintiff's age, education, work experience and residual functional capacity, and based on the testimony of the vocational expert, there were other jobs that exist in significant numbers in the national economy Plaintiff could perform, including the

job of housekeeping, cleaner. Tr. 28. The ALJ concluded Plaintiff was not under a disability within the meaning of the Social Security Act from December 31, 2006, through the date of the ALJ's decision. Tr. 28.

## ISSUES

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards. Plaintiff contends the ALJ erred by (1) failing to properly consider Plaintiff's symptom statements and (2) failing to properly consider the medical source opinions.

## DISCUSSION[1]

### 1. Plaintiff's Symptom Statements

Plaintiff contests the ALJ's determination that her symptom statements were not entirely consistent with the medical evidence and other evidence in the record. ECF No. 14 at 7-15.

It is generally the province of the ALJ to make determinations regarding the reliability of Plaintiff's symptom statements, *Andrews*, 53 F.3d at 1039, but the ALJ's findings must be supported by specific cogent reasons, *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Lester v.*

---

[1]In *Lucia v. S.E.C.*, 138 S.Ct. 2044 (2018), the Supreme Court recently held that ALJs of the Securities and Exchange Commission are "Officers of the United States" and thus subject to the Appointments Clause. To the extent Lucia applies to Social Security ALJs, the parties have forfeited the issue by failing to raise it in their briefing. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (the Court will not consider matters on appeal that were not specifically addressed in an appellant's opening brief).

*Chater*, 81 F.3d 821, 834 (9th Cir. 1995). "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834.

The ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence of record. Tr. 22. The ALJ provided four reasons for his determination: (1) the allegations were not consistent with the longitudinal medical evidence of record; (2) the allegations were inconsistent with Plaintiff seeking and receiving only conservative treatment; (3) Plaintiff made inconsistent statements; and (4) the allegations were inconsistent with her reported activities of daily living. Tr. 22-23.

## A. Medical Evidence

The ALJ's first reason for finding Plaintiff's statements unreliable, that Plaintiff's reported symptoms were not supported by medical evidence, is specific, clear and convincing.

Although it cannot serve as the sole ground for rejecting a claimant's statements, objective medical evidence is a "relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

The ALJ concluded that the "voluminous record contains few objective signs or laboratory findings of impairment to support the alleged intensity, frequency, or persistence of the claimant's impairments." Tr. 22. The ALJ noted that Plaintiff had complained of abdominal pain without objective findings and cited to a normal upper endoscopy, Tr. 637, reports of only intermittent problems from nausea and reflex, Tr. 625, 635, and reports that treatment for strongyloidiasis improved her symptoms, Tr. 609. Tr. 23. Additionally, Plaintiff alleged mental impairments, but her counseling notes revealed "few issues related to ongoing anxiety, with the majority of her complaints centered around living with her

parents." Tr. 24. Plaintiff's briefing challenged the ALJ's determination that her counseling notes did not address anxiety but did not challenge the ALJ's determination that her abdominal pain was not supported by objective evidence. ECF No. 14 at 14-15. The ALJ provided specific findings from the record to support his conclusion that Plaintiff's abdominal pain was not supported by objective evidence. Tr. 23. As such, this reason in combination with the ALJ's finding of conservative treatment, meets the necessary standard to support the ALJ's determination.

## B. Conservative Treatment

The ALJ's second reason for rejecting Plaintiff's statements, that the allegations were inconsistent with the conservative treatment she received, is specific, clear and convincing.

Conservative treatment can be "sufficient to discount a claimant's testimony regarding [the] severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007). Additionally, noncompliance with medical care or unexplained or inadequately explained reasons for failing to seek medical treatment cast doubt on a claimant's subjective complaints. 20 C.F.R. §§ 404.1530, 416.930; *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). Specifically, the ALJ pointed to the recommendation for a colonoscopy in 2009 which Plaintiff did not complete. Tr. 22.

On September 18, 2007, A. Clower, PA-C advised Plaintiff to have a colonoscopy. Tr. 597. In January 2009, Dr. Maher stated that they would need to discuss a colonoscopy and small bowel workup in the next visit, and finding that she would have to have a colonoscopy at some point. Tr. 637, 639. On July 14, 2009, Dr. Maher stated that he "had anticipated colonoscopy previously due to a brother with a large polyp but she had not been able to tolerate the prep and had to cancel that and was waiting to reschedule." Tr. 635. Dr. Maher then stated that if Plaintiff "decides at a later date that she wants to do the colonoscopy, she will let

us know and we will have to give her some sort of modified prep since she could not tolerate the other one." Tr. 636. By March 2011, Plaintiff told Dr. Rawlins she had never had a colonoscopy. Tr. 655. By August of 2013, she told Dr. Walker that she had still never had a colonoscopy. Tr. 739. At her intake for counseling in May of 2014, Plaintiff told the counselor that she was "[s]upposed to do a colonoscopy, but I keep getting too sick to do one." Tr. 1031.

Plaintiff argues that this failure to complete treatment recommendations is excused because the prep for the procedure was intolerable. ECF No. 14 at 9-10 *citing* S.S.R. 16-3p. However, this assertion is not supported by substantial evidence. In January of 2009, Dr. Maher stated that "she should undergo evaluation at a later date. Clearly she did not tolerate the prep earlier. We will need to hold off until the symptoms settle down." Tr. 639. In the next appointment he stated that her symptoms "tend to be in the mid abdomen, sometimes lower. For now we would hold off and see if symptoms settle down. If they persist, a small bowel workup and colon evaluation needs to be pursued as previously mentioned." Tr. 637. The record shows that the symptoms persisted, Tr. 689 (treated for abdominal pain on October 2, 2009); Tr. 669 (treated for abdominal pain on February 5, 2010); Tr. 1215 (treated for abdominal pain at Kadlec Clinic Gastroenterology in October of 2012), yet Plaintiff failed to complete the necessary testing. Tr. 739 (August of 2013, stated she had never had a colonoscopy); Tr. 1031 (In May of 2014, Plaintiff told the counselor that she was "[s]upposed to do a colonoscopy, but I keep getting too sick to do one."). Here, the persistence of symptoms required the testing and there was an alternative prep available had Plaintiff pursued treatment. There is no evidence that Plaintiff pursued an alternative prep schedule for the procedure. As such, the ALJ was not in error in his determination that the lack of a colonoscopy undermined the validity of Plaintiff's symptom statements.

///

### C.    Inconsistent Statements

The ALJ's third reason for finding Plaintiff's statements unreliable, that she made inconsistent statements about her ability to attend activities, is not supported by substantial evidence.

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements . . . and other testimony by the claimant that appears less than candid." *Smolen*, 80 F.3d at 1284.  The ALJ concluded that Plaintiff's allegation at the second hearing that she would miss six or more days of work each month was not consistent with her testimony that she had only one absence across her last quarter of college classes.  Tr. 23.

At the second hearing, Plaintiff testified that she had taken one college level class at a time in both the Fall and Spring prior to her hearing.  Tr. 170.  She stated that she had not missed any classes the quarter in which the hearing was held.  Tr. 182.  She then stated that she could not maintain an eight hour a day five days a week schedule:

> the class I was able to do because it was only one hour and I could take medications before it if I needed and have someone drive me.  But, for eight hours, I would have to stop and take breaks to take medications, and, jobs don't let you just take a break at any time you choose.  And also if I would have a flare-up of symptoms and needed to be able to go take pills I'm in the middle of doing something I wouldn't be able to do that.

Tr. 183.  She then estimated that her symptoms would preclude her from an eight hour a day, five days a week work schedule for six days or more a month.  Tr. 185. The ALJ concluded that Plaintiff's statement that her symptoms would result in missing work six or more days a month was inconsistent with her testimony that she had missed only one class in the quarter the hearing was held.  Tr. 23.

First, the ALJ misrepresented the record.  Plaintiff testified that she had not

missed any of her classes.  Tr. 182.  Second, the ALJ's conclusion that Plaintiff's statements were inconsistent when she provided an explanation regarding why she could attend her one hour class, but not attend work, is not supported by substantial evidence.  Therefore, it cannot meet the specific, clear and convincing standard.

### D.  Activities of Daily Living

The ALJ's fourth reason for rejecting Plaintiff's statements, that her reported activities cast doubt on her alleged limitations, is not specific, clear, and convincing.

A claimant's daily activities may support an adverse credibility finding if (1) the claimant's activities contradict her other testimony, or (2) "the claimant is able to spend a substantial part of [her] day engaged in pursuits involving performance of physical functions that are transferable to a work setting."  *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (citing *Fair*, 885 F.2d at 603).  "The ALJ must make 'specific findings relating to [the daily] activities' and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination."  *Id.* (quoting *Burch v. Barnhart,* 400 F.3d 676, 681 (9th Cir. 2005)).  A claimant need not be "utterly incapacitated" to be eligible for benefits. *Fair*, 885 F.2d at 603.

Here, the ALJ indicated that Plaintiff's reported activities were inconsistent with her other testimony.  The ALJ found that Plaintiff "has alleged a busy life with errands, chores, and college level classes.  At the second hearing, she did not indicate that these activities left her especially fatigued."  Tr. 23.  However, the ALJ's determination is not supported by substantial evidence.  At the second hearing, Plaintiff testified that she had taken one college level class at a time in both the Fall and Spring prior to her hearing.  Tr. 170.  She testified that following her class she takes naps through the afternoon, reads for her class, studies, and does some grocery shopping.  Tr. 174.  Despite her anxiety, she has been able to attend class.  *Id.*  Here, Plaintiff's testimony that she needed to nap following her classes

is in direct conflict with the ALJ's representation of her testimony.  Therefore this reason is not supported by substantial evidence.

While not all the reasons for discounting Plaintiff's testimony was supported by substantial evidence, the ALJ provided at least some specific, clear and convincing reasons.  *See Carmickle*, 533 F.3d at 1163 (upholding an adverse credibility finding where the ALJ provided four reasons to discredit the claimant, two of which were invalid); *Batson*, 359 F.3d at 1197 (affirming a credibility finding where one of several reasons was unsupported by the record); *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (an error is harmless when "it is clear from the record that the . . . error was inconsequential to the ultimate nondisability determination").

## 2. Medical Source Opinions

Plaintiff contests the weight the ALJ assigned to the medical source opinions in the file.  ECF No. 14 at 15-21.

In weighing medical source opinions, the ALJ should distinguish between three different types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and, (3) nonexamining physicians who neither treat nor examine the claimant. *Lester*, 81 F.3d at 830.  The ALJ should give more weight to the opinion of a treating physician than to the opinion of an examining physician.  *Orn*, 495 F.3d at 631.  Likewise, the ALJ should give more weight to the opinion of an examining physician than to the opinion of a nonexamining physician.  *Id.*

When a treating physician's opinion is not contradicted by another physician, the ALJ may reject the opinion only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991).  When a treating physician's opinion is contradicted by another physician, the ALJ is only required to provide "specific and legitimate reasons" for rejecting the opinion.  *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).  Likewise, when an examining

physician's opinion is not contradicted by another physician, the ALJ may reject the opinion only for "clear and convincing" reasons, and when an examining physician's opinion is contradicted by another physician, the ALJ is only required to provide "specific and legitimate reasons" to reject the opinion. *Lester*, 81 F.3d at 830-31.

The specific and legitimate standard can be met by the ALJ setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The ALJ is required to do more than offer his conclusions, he "must set forth his interpretations and explain why they, rather than the doctors', are correct." *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

### A.    Katie Karlson, M.D.

Dr. Karlson completed a Physical Functional Evaluation form for the Washington Department of Social and Health Services (DSHS) on March 20, 2014. Tr. 991-93. She listed Plaintiff's chief complaints as chronic fatigue, methylenetetrahdrofolate reductase (MTHRF) mutation, IBS, anxiety, abdominal pain/epigastric pain, multiple allergies, and gastroparesis. Tr. 991. She opined that Plaintiff's chronic fatigue resulted in moderate to marked limitations in the abilities to stand, walk, lift, carry, handle, push, pull, reach, and stoop. Tr. 992. The Abdominal Pain/Epigastric Pain resulted in a marked to severe limitation in the abilities to sit at times, stand, walk, lift, carry, handle, push, pull, reach, stoop, and crouch. *Id*. The IBS resulted in marked limitations in the same basic work activities. The painful menstrual periods resulted in marked to severe limitations in the same basic work activities. *Id*. The anxiety resulted in a moderate to marked limitation in the abilities to see, hear, and communicate. *Id*. Dr. Karlson opined that Plaintiff was unable to meet the demands of sedentary work and estimated that this limitation would persist with available medical treatment for

fourteen months.  Tr. 993.

On February 2, 2016, Dr. Karlson completed another Physical Functional Evaluation form for DSHS.  Tr. 1421-23.  She provided the same limitations regarding Plaintiff's impairments and their resulting limitations on the basic work activities as in the March 20, 2014 evaluation, except she added that chronic fatigue would result in moderate to marked limitations in crouching.  Tr. 1422. She again opined that Plaintiff was unable to meet the demands of sedentary work and estimated that this limitation would persist with available medical treatment for twelve months.  Tr. 1423.

On May 30, 2017, Dr. Karlson completed a third Physical Functional Evaluation form for DSHS.  Tr. 1575-77.  She provided the same limitations regarding Plaintiff's impairments and their resulting limitations on the basic work activities as in the February 2, 2016 evaluation.  Tr. 1576.  She again opined that Plaintiff was unable to meet the demands of sedentary work and estimated this limitation on work activities would persist with available medical treatment for twelve months.  Tr. 1577.

The ALJ gave these opinions only partial weight for two reasons:  (1) the opinions were not supported by Dr. Karlson's observations and likely based on Plaintiff's self-reports; and (2) the opinions were inconsistent with the longitudinal medical evidence.  Tr. 25.

The ALJ's first reason for providing little weight to Dr. Karlson's opinions, that they were inconsistent with her observations and based on Plaintiff's self-reports, is legally sufficient.  The Ninth Circuit has found that inconsistencies between the opinion and the physician's observations is a clear and convincing reason to reject the opinion.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).  When discussing the March 20, 2014 opinion, the ALJ concluded that it "was not supported by her examination notes from that same day, in which she reported that the claimant "has no concerns" (Ex. 12F, p.5)."  Tr. 25.  This is

consistent with the record. Attached to the DSHS form were the treatment notes

from the evaluation in which Dr. Karlson states "Patient is here to have paperwork

from DSHS filled out. Patient states the paperwork is for medical benefits like

cash while being sick. Patient has no concerns." Tr. 994. Plaintiff reported no

symptoms besides nausea and abdominal pain with some improvement and

decreased concentration. Tr. 995. The physical examination only showed slight

tenderness throughout the abdomen and a normal mood and affect, but Plaintiff

was anxious and talkative. *Id.* Her last gastrointestinal workup showed some

gastroparesis which was treated with an instruction to eat smaller meals. Tr. 995-

6. Additionally, it was noted that while she was diagnosed with multiple allergies,

testing showed no allergies. Tr. 996.

      The ALJ went on to conclude that based on these inconsistencies between

the opinion and the treatment notes, Dr. Karlson's limitations appear to be based

on Plaintiff's reports: "In fact a review of her notes reveals that her proposed

limitations were generally based on the claimant's own complaints rather than any

objective findings." Tr. 25. A doctor's opinion may be discounted if it relies on a

claimant's unreliable self-report. *Bayliss*, 427 F.3d at 1217; *Tommasetti*, 533 F.3d

at 1041 (finding that the reason met at least the lesser standard of specific and

legitimate). However, the ALJ must provide the basis for his conclusion that the

opinion was based on a claimant's self-reports. *Ghanim v. Colvin*, 763 F.3d 1154,

1162 (9th Cir. 2014). Here, the ALJ's conclusion that Dr. Karlson's opinion was

inconsistent with her observations is the rationale cited for concluding that the

opinion was based on Plaintiff's self-reports instead of objective evidence. Tr. 25.

Therefore, the requirement in *Ghanim* has been met. Additionally, the ALJ is

accurate that when reviewing the treatment record, the opinion is influenced by

Plaintiff's reports:

      Has had past egd and work-up with GI and at one time was told she had
      a component of gastroparesis and should eat smaller frequent meals;

she has made dietary changes, but still has issues with pain which she feels are severely limiting in the work environment, making it difficult to bend or stand for long periods of time - - encouraged her to continue dietary changes and if worsens follow up with GI.

Tr. 995-96.

Additionally, the ALJ found that "Dr. Karlson's remaining treatment notes are similarly bereft of objective findings and generally demonstrate only conservative treatment and medical management." Tr. 25. The ALJ noted that in comparing the 2014 and the 2017 opinions it becomes apparent that despite the severe level of limitations opined, Dr. Karlson's recommended treatment remains the same. *Id.* On the 2014 evaluation, Dr. Karlson recommended regular follow ups, vitamins, regular sleep, counseling, relaxation, and dietary changes. Tr. 993. On the 2017 evaluation, she recommended medications, counseling, vitamins, and regular follow-ups. Tr. 1577.

The ALJ's first reason for giving only partial weight to Dr. Karlson's opinions is legally sufficient and supported by substantial evidence. Therefore, the Court will not disturb the weight the ALJ assigned to his opinion.

The ALJ's second reason for giving only partial weight to Dr. Karlson's opinion, that it was inconsistent with the longitudinal medical evidence of record, is not legally sufficient. The ALJ stated that Dr. Karlson's opinions were "inconsistent with the remaining medical evidence of record, which does not document a level of fatigue or abdominal pain that would preclude light or even sedentary work." Tr. 25. He additionally stated that he "would expect to see some greater variation of treatment, or the pursuit of treatment beyond conservative care." *Id.* Inconsistency with the majority of objective evidence is a specific and legitimate reason for rejecting physician's opinions. *Batson*, 359 F.3d at 1195. Regardless, the ALJ failed to provide what evidence outside of Dr. Karlson's records were inconsistent with the opinions. Tr. 25. The ALJ's failure to specifically address which objective evidence undermined Dr. Karlson's opinion

was an error.  *Embrey*, 849 F.2d t 421-22 (The ALJ is required to do more than offer his conclusions, he "must set forth his interpretations and explain why they, rather than the doctors', are correct.").  However, this would be considered harmless error because the ALJ provided another legally sufficient reason to give the opinion less weight.  *See Tommasetti*, 533 F.3d at 1038 (An error is harmless when "it is clear from the record that the . . . error was inconsequential to the ultimate nondisability determination.").

### B.    Neil Rawlins, M.D.

On November 22, 2016, Dr. Rawlins wrote a letter stating that Plaintiff was not able to function due to her abdominal pain "during the best times very well and it is worse during her menstrual period."  Tr. 1424.  He went on to state that "This continues to continue (*sic.*) to severely limit her ability to function in society.  We have treated with conservative medical treatments which have helped some but still makes it difficult to hold a job or function with normal activities of daily life."  *Id*.

On July 12, 2013, Dr. Rawlins had also stated that "Patient has had significant fatigue.  We have tried several things to see if we can improve the fatigue however she [is] still not able to work a full day."  Tr. 1294.

The ALJ gave only partial weight to the 2016 opinion and little weight to the 2013 statement for four reasons:  (1) the opinions were on an issue reserved for the Commissioner; (2) Dr. Rawlins failed to support the opinions; (3) Dr. Rawlins failed to discuss any specific functional limitations, and (4) the opinions were inconsistent with the remaining medical evidence of record.  Tr. 26.  Additionally, the ALJ rejected Dr. Rawlins' 2013 statement because he was an obstetrician/gynecologist (OBGYN) and fatigue was outside his area of expertise.  *Id*.

The ALJ's first reason for assigning the opinions only partial weight, that they were on an issue reserved for the Commissioner, is legally sufficient.  The regulations have stated that medical source opinion on issues reserved for the

Commissioner are not medical opinions and are not due any special significance. 20 C.F.R. §§ 404.1529(d), 416.927(d). Opinions that a claimant is disabled is an issue reserved for the Commissioner: "A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled." 20 C.F.R. §§ 404.1529(d)(1), 416.927(d)(1). To the extent that Dr. Rawlins' statements reflect an opinion that Plaintiff is disabled or unable to work as a conclusion, the ALJ's rejection of them is supported by his assertion that they are opinions reserved for the Commissioner and, therefore, fail to be medical source opinions.

Plaintiff asserts that these statements are not conclusive opinions on an issue reserved for the Commissioner, but are instead a functional opinion that Plaintiff would be unable to sustain work as defined by the Commissioner. EFC No. 14 at 19. The Ninth Circuit found that statements addressing a Plaintiff's ability to sustain work activity is not rejected by 20 C.F.R. §§ 404.1527(d), 416.27(d). *See Hill v. Astrue*, 698 F.3d 1153, 1160 (9th Cir. 2012) (a treating physician's statement that the claimant would be "unlikely" to work full time was not a conclusory statement like those described in 20 C.F.R. §§ 404.1527(d), 416.27(d) because it was an assessment based on objective medical evidence of the claimant's likelihood of being able to sustain full time work.). To the extent that Dr. Rawlins' statements are addressing Plaintiff's ability to sustain work and not just a conclusion that she cannot work, the ALJ provided his second, third, and fourth reasons for assigning the opinions less weight.

The ALJ's second and third reasons for assigning the opinions less weight, that Dr. Rawlins failed to support the opinions and failed to provide any functional limitations, are legally sufficient. An ALJ can reject a treating physician's opinion that is conclusory, brief, and unsupported by the record as a whole. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Batson*, 359 F.3d at 1195. The 2016 letter speaks to an inability to function due to pain, "She is not able to function due

to this pain," "continue to severely limit her ability to function in society," and "[m]akes it difficult to hold a job or function with normal activities of daily life." Tr. 1424. However, the inability to function lacks specificity and Dr. Rawlins fails to tie this vague inability to function to any objective finding that supports the opinion. *Id*. As such, finding these opinions conclusory and brief without a discussion of supporting evidence is sufficient to assign them less weight.

The ALJ's fourth reason for assigning only partial weight to the opinions, that they were inconsistent with the remaining medical evidence of record, is not legally sufficient. The ALJ concluded that opinions were "not consistent with the remaining medical evidence of record, which does not demonstrate a complete inability to perform work." Tr. 26. As discussed above, opinions that are unsupported by the record as a whole can be rejected by the ALJ. *Thomas*, 278 F.3d at 957; *Batson*, 359 F.3d at 1195. However, the ALJ is required to state with some specificity what evidence is inconsistent with the opinion. *Embrey*, 849 F.2d t 421-22 (The ALJ is required to do more than offer his conclusions, he "must set forth his interpretations and explain why they, rather than the doctors', are correct."). Therefore, the ALJ's failure to set forth what medical evidence was inconsistent with the opinions renders this reason insufficient to support giving the opinions less weight. However, this would be considered harmless error because the ALJ provided another legally sufficient reason to give the opinions less weight. *See Tommasettie*, 533 F.3d at 1038 (An error is harmless when "it is clear from the record that the . . . error was inconsequential to the ultimate nondisability determination.").

The ALJ also found that Dr. Rawlins' 2013 statement that Plaintiff could not "work a full day" due to her fatigue was due less weight because Dr. Rawlins is an OBGYN and fatigue was outside his area of expertise. Tr. 26. This is not a legally sufficient reason to reject the statement. While the ALJ is to consider factors such as a physician's specialty when weighing an opinion, 20 C.F.R. §§ 404.1527(c),

416.927(c), the Social Security Ruling (S.S.R.) on chronic fatigue syndrome states that evidence to establish the syndrome as a medical determinable impairment must come from a licensed medical or osteopathic doctor. S.S.R. 14-1p. The S.S.R. specifically speaks to the fact that chronic fatigue syndrome is a manifest collection of specific symptoms and is not assigned to a specific body system that would correlate to a definitive medical test or a medical specialist. *Id*. Therefore, Dr. Rawlins' status as an OBGYN does not negate his opinion on that reason alone. However, this would be considered harmless error because the ALJ provided another legally sufficient reason to give the opinions less weight. *See Tommasetti*, 533 F.3d at 1038 (An error is harmless when "it is clear from the record that the . . . error was inconsequential to the ultimate nondisability determination.").

Plaintiff further asserts that the ALJ failed to consider the factors addressed in 20 C.F.R. §§ 404.1527(c), 416.927(c), and that such a failure is a reversible error. ECF No. 14 at 19-20 (citing *Trevizo v. Berryhill*, 862 F.3d 987, 998 (9th Cir. 2017). The Ninth Circuit has recently held that a failure to address the factors set forth in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6) "constitutes reversible legal error." *Trevizo*, 871 F.3d at 676. These factors include the length of treatment relationship, the nature and extent of the treatment relationship, whether the physician provides support for the opinion, the consistency of the opinion with the medical evidence of record, the physician's specialization, and other factors. 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6). However, the reasons provided by the ALJ for assigning the opinions only partial weight demonstrates that the ALJ considered these factors. *See* Tr. 26 (assigning less weight to the opinions based on the lack of support for the opinion, the lack of consistency of the opinion with the medical evidence of the record, and a lack of specialty on the part of Dr. Rawlins). As such, Plaintiff's assertion is insufficient to support remanding the case.

### C.     Psychological Opinions

Plaintiff argues that the ALJ failed to properly weigh the psychological opinions in the record.  ECF No. 14 at 21.  Her briefing asserts that four specific errors:  (1) the ALJ failed to consider that Dr. Karlson was the only medical source to consider the combined effects of Plaintiff's physical and psychological impairments, (2) the ALJ failed to discuss the presence of a somatic symptom disorder that was found by Dr. Marks, (3) the ALJ failed to consider the complex relationship between Plaintiff's physical and psychological impairments, and (4) the ALJ erred in rejecting Dr. Moon's opinions of significant limitations in attendance.  *Id.*

All four reported errors were asserted in a single paragraph in the last page of Plaintiff's initial briefing and provide little to no argument regarding the issues.  In his decision, the ALJ did assign little weight to the opinions of Dr. Moon and Dr. Marks in favor of the opinion of examining psychologist Dr. Genthe citing both opinions as inconsistent with the evaluations performed by each psychologist.  Tr. 26.  As discussed above, inconsistencies between the opinion and the psychologist's observations is a clear and convincing reason to reject the opinion.  *Bayliss*, 427 F.3d at 1216.  However, considering Plaintiff failed to articulate these arguments beyond a mere assertion, the Court will not consider them in more detail.  *See Carmickle*, 533 F.3d at 1161 n.2.  The Ninth Circuit explained the necessity for providing specific argument:

> The art of advocacy is not one of mystery.  Our adversarial system relies on the advocates to inform the discussion and raise the issues to the court.  Particularly on appeal, we have held firm against considering arguments that are not briefed.  But the term "brief" in the appellate context does not mean opaque nor is it an exercise in issue spotting.  However much we may importune lawyers to be brief and to get to the point, we have never suggested that they skip the substance of their argument in order to do so.  It is no accident that the Federal Rules of Appellate Procedure require the opening brief to contain the

"appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies." Fed. R. App. P. 28(a)(9)(A). We require contentions to be accompanied by reasons.

*Independent Towers of Wash. v. Wash.*, 350 F.3d 925, 929 (9th Cir. 2003).[2] Moreover, the Ninth Circuit has repeatedly admonished that the court will not "manufacture arguments for an appellant" and therefore will not consider claims that were not actually argued in appellant's opening brief. *Greenwood v. Fed. Aviation Admin.*, 28 F.3d 971, 977 (9th Cir. 1994). Because Plaintiff failed to provide adequate briefing, the court declines to consider this issue.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS ORDERED:**

1. Defendant's Motion for Summary Judgment, **ECF No. 15**, is **GRANTED**.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **DENIED**.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. **Judgment shall be entered for Defendant** and the file shall be **CLOSED**.

DATED January 28, 2019.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE

_____

[2]Under the current version of the Federal Rules of Appellate Procedure, the appropriate citation would be to FED. R. APP. P. 28(a)(8)(A).